IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| TRACY L. CASSEZZA, ) | |
| ) | |
| Plaintiff, ) | Case No. 05-702-KI |
| ) | |
| vs. ) | OPINION AND ORDER |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

Alan R. Unkeles
1865 N. W. 169th Place, No. 121
Beaverton, Oregon 97006

    Attorney for Plaintiff

Karin J. Immergut
United States Attorney
District of Oregon
Neil J. Evans
Assistant United States Attorney
1000 S. W. Third Avenue, Suite 600
Portland, Oregon 97204

Page 1 - OPINION AND ORDER

Jeffrey Hugh Baird
Special Assistant United States Attorney
Michael McGaughran
Social Security Administration
Office of General Counsel
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, Washington  98104-7075

    Attorneys for Defendant

KING, Judge:

Plaintiff Tracy Cassezza brings this action pursuant to section 405(g) of the Social Security Act to obtain judicial review of a final decision of the Commissioner denying her application for disability insurance benefits ("DIB").  I reverse the decision of the Commissioner and remand for further proceedings.

## BACKGROUND

Plaintiff filed an application for DIB on August 20, 2002, alleging disability as of January 1, 1999.  The application was denied initially and upon reconsideration.  After a timely request for a hearing, plaintiff appeared before an Administrative Law Judge ("ALJ").  On June 25, 2004, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act and therefore not entitled to benefits.  This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ on March 28, 2005.

## LEGAL STANDARDS

The Social Security Act (the "Act") provides for payment of DIB to people who have contributed to the Social Security program and who suffer from a physical or mental disability.

42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security income benefits ("SSI") may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The burden of proof to establish a disability rests upon the claimant.  <u>Gomez v. Chater</u>, 74 F.3d 967, 970 (9th Cir.), <u>cert. denied</u>, 519 U.S. 881 (1996) (DIB); <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257 (9th Cir. 1992) (SSI).  To meet this burden, the claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability.  20 C.F.R. §§ 404.1520 and 416.920; <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1996) (DIB); <u>Quang Van Han v. Bowen</u>, 882 F.2d 1453, 1456 (9th Cir. 1989) (SSI).  First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity."  If the claimant is engaged in such activity, disability benefits are denied.  Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the

Page 3 - OPINION AND ORDER

claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Distasio v. Shalala, 47 F.3d 348, 349 (9th Cir. 1995) (DIB); Drouin, 966 F.2d at 1257 (SSI). The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

When an individual seeks either DIB or SSI because of disability, judicial review of the Commissioner's decision is guided by the same standards. 42 U.S.C. §§ 405(g) and 1383(c)(3). This court must review the case to see if the decision of the Commissioner is supported by

Page 4 - OPINION AND ORDER

substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). It is more than a scintilla, but less than a preponderance, of the evidence. Id.

Even if the Commissioner's decision is supported by substantial evidence, it must be set aside if the proper legal standards were not applied in weighing the evidence and in making the decision. Id. The court must weigh both the evidence that supports and detracts from the Commissioner's decision. Id. The trier of fact, and not the reviewing court, must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the Commissioner. Id. at 720-21.

## FACTS

I.  Cassezza's History

Plaintiff, 38 years old at the time of the hearing, alleges disability beginning January 1, 1999, due to panic disorder and depressive disorder. Plaintiff has been diagnosed with panic disorder and depressive disorder by Joe Wood, Psy.D., and by Leslie Myers, a nurse practitioner. Myers opined that plaintiff could not work outside the home and could not attend a hearing or speak with a judge due to panic disorder.

Plaintiff has a history of trying different medications to treat her anxiety and depression. Her most successful use of medication occurred in 2001, but she self-reduced the amount because she was tired of gaining weight. At times plaintiff is fearful of leaving her home, experiences a racing heart, a faint feeling, and terror, but at other times plaintiff reports being able to go to the movies, to restaurants, to shop for food, and to attend doctors appointments.

Page 5 - OPINION AND ORDER

She flew to Hawaii with her husband and children, and she interviewed for a job but declined the offer of full-time employment because she wanted to work part-time.

II.     The ALJ's Decision

The ALJ found that plaintiff had physical and psychological impairments considered severe within the meaning of 20 C.F.R. § 404.1520(b).  Specifically, he found that she suffered from panic disorder and depressive disorder, but that she could perform simple, routine, repetitive work, with no public interaction.

Based on this residual functional capacity ("RFC"), and the testimony of the vocational expert ("VE"), the ALJ concluded that plaintiff could return to her past relevant work as an office clerk.  Accordingly, the ALJ found that plaintiff was not under a "disability" within the meaning of the Social Security Act, at any time through her date last insured.

## DISCUSSION

I.     Credibility Determination

Plaintiff contends that the ALJ improperly rejected her testimony as to her mental limitations.  The Commissioner argues that the ALJ's credibility assessment is supported by substantial evidence, noting that plaintiff does not challenge the opinions of the agency physicians who made findings contrary to plaintiff's complaints, and that plaintiff's daily activities are more substantial than her allegations of anxiety would otherwise support.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis.  In the first stage, the claimant must (1) produce objective medical evidence of one or more impairments; and (2) show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.

Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The claimant is not required to produce objective medical evidence of the symptom itself, the severity of the symptom, or the causal relationship between the medically determinable impairment and the symptom. The claimant is also not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. Id. at 1282.

In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ makes specific findings stating clear and convincing reasons for the rejection, including which testimony is not credible and what facts in the record lead to that conclusion. Id. at 1284. Clear and convincing reasons for discrediting a claimant's testimony include consideration of inconsistencies between testimony and conduct, daily activities, type and dosage of medication, failure to seek treatment or to follow prescribed treatment, and reports to physicians. 20 C.F.R. 404.1529; see also, Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991).

Plaintiff produced medical evidence of underlying impairments consistent with her complaints and there is no evidence that she is malingering. Therefore, the ALJ must provide clear and convincing reasons for rejecting plaintiff's testimony as to the severity of the symptoms she alleged.

The ALJ relied on plaintiff's comments about her activities, such as her reports of vacationing in Hawaii, her interview for a new job, and her statement in August 2001 that she was pleased with her life. The ALJ also noted that other medical records reflected her reports

that she shops, accompanies her son to doctors appointments, attends her son's sports events and her daughter's plays.

After fully and fairly considering all the evidence, I find that the ALJ gave clear and convincing reasons supported by specific facts in the record in rejecting plaintiff's claimed limitations as to the extent of her anxiety. The ALJ's credibility findings and interpretation of the record are supported by substantial evidence with regard to plaintiff's alleged anxiety.

In addition, the Commissioner's point about plaintiff's acceptance of the agency physician's opinions is well-taken. The agency physicians opined that plaintiff experiences moderate limitations in her ability to follow detailed instructions, set goals, and interact with the public. Plaintiff does not dispute these opinions, but they are at odds with plaintiff's reports that her husband must accompany her everywhere in order to avert anxiety attacks.

I find that the ALJ gave clear and convincing reasons for finding plaintiff's reports about the level of her anxiety not entirely credible.

II.   Medical Evidence

   A.   Agency Physicians' Opinions

Plaintiff asserts that the ALJ erred in not discussing whether and how he relied on the agency opinions regarding plaintiff's limitations. According to plaintiff, it appears the ALJ relied on their assessments in forming plaintiff's RFC that plaintiff is moderately limited in carrying out detailed decisions, and moderately limited in her ability to interact with the general public. However, it is not clear from the decision that this is so. In addition, the ALJ did not account for their other opinions that plaintiff is moderately limited in her ability to set goals or make plans. The Commissioner responds that this court can reasonably infer from the decision

Page 8 - OPINION AND ORDER

that the ALJ folded these limitations into plaintiff's RFC since setting goals and making plans are more complicated activities than simple, repetitive, routine work allows.

Drs. Robert Henry and Paul Rethinger, psychologists working for the agency, completed mental residual functional capacity reports based on their review of the record. Although the ALJ does not identify these reports by name, he does state, "A thorough review of the medical records reveal the claimant's mental impairments do cause vocationally relevant limitations, in that they cause mild restrictions in her activities of daily living, moderate difficulties in maintaining social functioning and moderate limitations in maintaining concentration, persistence or pace." Tr. 19. In addition, plaintiff's RFC reflects the opinions of Drs. Henry and Rethinger in that the ALJ found plaintiff could perform simple, routine, repetitive work, with no public interaction. It appears to me that the ALJ's failure to describe the weight he gave to these reports was harmless. Nevertheless, since I remand for other reasons as explained below, the ALJ should explain on remand what weight he gave these opinions in conformance with Social Security Ruling 96-6p.[1] Furthermore, the ALJ should also explain why plaintiff's RFC did not specifically include the opinions of Drs. Henry and Rethinger that plaintiff needs assistance with goal planning. Tr. 148, 195.

---

[1] "**Policy Interpretation Ruling Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians and Psychologists at the Administrative Law Judge and Appeals Council Levels of Administrative Review; Medical Equivalence** . . . 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions." SSR 96-6p.

Page 9 - OPINION AND ORDER

B.  Lay Witness Testimony

Plaintiff complains that the ALJ neglected to provide reasons for rejecting the opinion of her nurse, Leslie Myers. The Commissioner responds that the ALJ provided germane reasons for giving Myers' opinion little weight.

Because Meyers is not an acceptable medical source under 20 C.F.R. § 404.1513(a), her testimony is analyzed as lay testimony under 20 C.F.R. § 404.1513(d). Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness. A medical diagnosis, however, is beyond the competence of lay witnesses. Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996).

Myers opined that plaintiff was unable to work outside her home and was unable to come to a hearing and speak with a judge. The ALJ gave Myers' opinion little weight because her opinion was based on plaintiff's subjective complaints. In addition, the ALJ noted plaintiff's daily activities conflicted with the limitations identified by Myers.

The ALJ's reasons for giving little weight to Myers' opinion were germane, and were supported by substantial evidence in the record. Accordingly, the ALJ did not err.

III.  Residual Functional Capacity

Plaintiff argues that the ALJ improperly found plaintiff could do her past relevant work when her RFC conflicts with her ability to do semi-skilled work. The Commissioner responds that the VE identified the clerk position as a borderline case, and opined that plaintiff could perform it despite its label as semi-skilled work.

The ALJ opined that plaintiff could perform simple, routine, repetitive work, with no public interaction, and that she could be employed as an office clerk. The office clerk has a Specific Vocational Preparation (SVP) time of 3; the SVP corresponds to the level of skill required to perform the job. An SVP of 3 puts the job in the classification of semi-skilled work. The definition for semi-skilled work is as follows:

> Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks.

20 C.F.R. § 404.1568(b).

In contrast unskilled work is defined as follows:

> Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs.

20 C.F.R. § 404.1568(a).

The ALJ, relying on the VE's testimony, found that plaintiff could return to her past semi-skilled work, despite the fact that the skill level required for that job is different from the ALJ's determination of the claimant's RFC. The VE testified that the conflict is resolved because the office clerk position is on the borderline between unskilled and semi-skilled. After

Page 11 - OPINION AND ORDER

the ALJ posed plaintiff's RFC to the VE, the full extent of the VE's testimony proceeded as follows:

> VE: The only work that she could perform would be that of the general office clerk position.
> ALJ: I thought that was semiskilled. The store clerk was unskilled, right?
> VE: Yes, Judge. Am I not understanding the hypothetical as to her background?
> ALJ: It was intended to eliminate any – simple, routine, repetitive work, entry-level type work.
> VE: General office clerk carries an SVP of 3.
> ALJ: Okay.
> VE: So it's one of those borderline by the department standards.

Tr. 240.

It is somewhat disconcerting that plaintiff's counsel failed to use the opportunity to cross-examine the VE on her opinion that the general clerk position is "borderline by the department standards" when the VE offered no rationale for how plaintiff's RFC is compatible with a semi-skilled position. Nevertheless, an unexplained discrepancy between the ALJ's determination of the claimant's RFC and the VE's testimony that the claimant can perform past relevant work with inconsistent skill requirements requires a remand for further explanation.

As the Ninth Circuit explained in <u>Pinto v. Massanari</u>, 249 F.3d 840, 844-47 (9th Cir. 2001), although it is the claimant's burden to demonstrate she can no longer perform past relevant work at step four, the ALJ must support his decision that the claimant's RFC comports with the requirements of her past relevant work. To effectuate this duty, the ALJ must explain either how he concludes the claimant can engage in past work as she actually performed it, relying on her vocational report or her testimony, or how the job is generally performed, relying on the Dictionary of Occupational Titles ("DOT") or the VE's testimony. Here, although neither the ALJ nor her attorney questioned plaintiff about her past relevant work during the hearing,

Page 12 - OPINION AND ORDER

there is evidence in the record from plaintiff about how she performed her past work. Tr. 73-80. However, the ALJ did not discuss this evidence in his decision. Instead, the ALJ chose to rely on the VE's testimony. Unfortunately, as the ALJ noted during the hearing, the VE's testimony was contrary to the DOT, and "in order for an ALJ to rely on a job description in the Dictionary of Occupational Titles that fails to comport with a claimant's noted limitations, the ALJ must definitely explain this deviation." Pinto, 249 F.3d at 847; Social Security Ruling 00-4p (ALJ must "[e]xplain in the determination or decision how any conflict that has been identified was resolved").

Since the ALJ's opinion did not address the fact that a semi-skilled job may require more than the ability to perform simple, routine, repetitive tasks, I must remand to him to explain why plaintiff's RFC is compatible with her ability to perform her past relevant work. Alternatively, the ALJ may proceed to step five.

## CONCLUSION

The decision of the Commissioner is reversed. This action is remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g). Judgment will be entered.

IT IS SO ORDERED.

Dated this ___6th___ day of April, 2006.

                                                     /s/ Garr M. King
                                                  Garr M. King
                                                  United States District Judge